**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

---

**ZAYNE ABDULLAH**
c/o Murphy, Falcon & Murphy
1 South Street, 30th Floor
Baltimore, Maryland 21202

and

**DONNELL BURGESS**
c/o Murphy, Falcon & Murphy
1 South Street, 30th Floor
Baltimore, MD 21202

     *Plaintiffs*

*v.*

**BALTIMORE POLICE DEPARTMENT**
601 East Fayette Street
Baltimore, Maryland 21202

     Serve on:    Michael Harrison
                    Police Commissioner
                    Baltimore Police Department
                    601 East Fayette Street
                    Baltimore, Maryland 21202

and

**WELTON SIMPSON, JR.**
Individually

     Serve on:    Michael Harrison
                    Police Commissioner
                    Baltimore Police Department
                    601 East Fayette Street
                    Baltimore, Maryland 21202

and

**Case No. _____**

**BYRON CONAWAY**
Individually

      Serve on:    Michael Harrison
                      Police Commissioner
                      Baltimore Police Department
                      601 East Fayette Street
                      Baltimore, Maryland 21202

and

**DARYL GAINES**
Individually

      Serve on:    Michael Harrison
                      Police Commissioner
                      Baltimore Police Department
                      601 East Fayette Street
                      Baltimore, Maryland 21202

and

**JESSICA SCOTT**
Individually

      Serve on:    Michael Harrison
                      Police Commissioner
                      Baltimore Police Department
                      601 East Fayette Street
                      Baltimore, Maryland 21202

and

**TOM DAVIS**
Individually

      Serve on:    Michael Harrison
                      Police Commissioner
                      Baltimore Police Department
                      601 East Fayette Street
                      Baltimore, Maryland 21202

            *Defendants*

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Zayne Abdullah and Donnell Burgess, by and through undersigned counsel, hereby file this Complaint against Defendants Baltimore Police Department, Sergeant Welton Simpson, Jr., Major Byron Conaway, Major Daryl Gaines, Detective Jessica Scott, and Sergeant Tom Davis (collectively, "Defendants"), and in support, Plaintiffs state as follows:

## JURISDICTION AND VENUE

1.     This Complaint contains claims arising under the Fourth and Fourteenth Amendments to the U.S. Constitution and asserts claims for relief pursuant to 42 U.S.C. § 1983, claims for relief under Article 24 of the Maryland Declaration of Rights, and claims for relief under Maryland state law.

2.     Jurisdiction of this Court arises under 28 U.S.C. § 1343 and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

3.     Venue is proper in the District of Maryland pursuant to 28 U.S.C. § 1391(b) because the events, acts, and omissions complained of herein all occurred within this District.

## PARTIES

4.     At all relevant times, Plaintiff Zayne Abdullah ("Plaintiff Abdullah" or "Zayne") was and is a resident of Maryland. He is an adult African American male.

5.     At all relevant times, Plaintiff Donnell Burgess ("Plaintiff Burgess" or "Donnell") was and is a resident of Maryland. He is an adult African American male.

6.     Plaintiffs Abdullah and Burgess are collectively referred to herein as Plaintiffs.

7.     At all relevant times, Defendants Sergeant Welton Simpson, Jr., Major Byron Conaway, Major Daryl Gaines, Detective Jessica Scott, and Sergeant Tom Davis, (collectively "Officer Defendants") were Baltimore City Police Officers, employed by Defendant Baltimore

Police Department. As police officers, the Officer Defendants act and/or have acted as agents, servants, and/or employees of the Baltimore City Police Department and within the scope of that employment and under color of law. They are sued in their individual capacities only.

8.      Defendant Baltimore Police Department ("BPD") is a government agency of the State of Maryland, but BPD and its officers perform functions typical of a municipal, not state, police department. The BPD, through its agents, servants, and employees, hired, supervised, trained, and retained the Officer Defendants. By virtue of its status as a municipal governmental entity that exercised the power delegated by the State of Maryland, the BPD acted under the color of state law when it hired, supervised, trained, and retained the Officer Defendants. The BPD is a "person" under 42 U.S.C. §1983 and is not immune under the Eleventh Amendment.

9.      At all relevant times each Defendant was acting under color of state law.

## STATEMENT OF FACTS

### A.   The BPD's Pattern and Practice of Constitutional Violations

#### 1.   Department of Justice Report

10.     In the wake of the death of Freddie Carlos Gray, Jr., ("Freddie Gray") the United States Department of Justice ("DOJ") released a 163-page report ("DOJ Report") outlining the BPD's pervasive pattern and practice of unlawful stops, searches, and arrests that violated the U.S. Constitution and federal and state laws.

11.     The DOJ report was specific, detailed, and thorough in describing the persistent and pervasive Constitutional violations committed by the BPD and its officers. To complete its investigation, the DOJ interviewed current and former City leaders, current and former commissioners, and current and former officers. The DOJ also participated in ride-alongs with BPD officers and interviewed citizens of the City. The DOJ also reviewed hundreds of thousands

of pages of documents, which included, *inter alia*, incident reports and data from citizen stops and arrests.

12.    The DOJ found that this pervasive and persistent pattern of Constitutional violations was not new to the BPD. To the contrary, these violations had been going on for decades, since at least the 1990s when the BPD began the institutionalized practice of, *inter alia*, unconstitutionally stopping and searching individuals who were lawfully present in the City's streets, arresting citizens without probable cause, committing uses of excessive force, and retaliating against people who engaged in protected speech under the Constitution.

13.    In addition to the BPD's response to the City's "zero tolerance" policy for enforcement of various laws, the pattern and practice of unconstitutional violations were driven and encouraged by systemic deficiencies in BPD's policies, training, supervision, and accountability structures.

14.    Consistent with the systemic deficiencies of the BPD, the BPD failed to provide oversight to police officers regarding their interactions with citizens that implicated First Amendment protections. Specifically, BPD officers frequently detained, arrested, and used excessive force against members of the public for engaging in speech that the officers considered to be critical or disrespectful, even though it was speech protected by the Constitution.

15.    BPD officers also routinely arrested and brutalized individuals who exercised their right to verbally criticize or oppose law enforcement officers but who did not actively interfere with the officers' lawful performance of their duties. BPD officers detained, arrested, and used excessive force against individuals for speech that they perceived to be rude or critical of the officer or those who questioned the lawfulness or appropriateness of the officers' actions. BPD officers

also retaliated against individuals who engaged in protected speech, tackling and arresting them simply because they spoke out.

16.    Violations were not limited to First Amendment rights violations. The DOJ also reported that a significant number of incidents that it reviewed involved BPD officers using excessive force against individuals who were fleeing from officers and who presented little or no threat of harm to the officer or to others. Many of the incidents involved officers who chased civilians on foot, often without suspicion that the civilian had committed any serious crime. Once engaged in the pursuit, officers then routinely used excessive force to end the pursuit, regardless of whether they had probable cause to conduct a stop or to make an arrest. Often, the force used to end the pursuit was disproportional to the suspected crime and the threat posed by the citizen, resulting in injury to that citizen.

17.    African Americans endured a disproportionate number of unconstitutional stops, searches, excessive uses of force, and prosecution of criminal charges. The DOJ concluded that the violations were targeted and directed at African American citizens, suggesting intentional discrimination against the African American citizens of the City. Yet the BPD failed to conduct any analysis of its own data to ensure that its enforcement activities were reasonable and non-discriminatory, and when complaints were made to the BPD regarding discrimination, the BPD either misclassified or failed to investigate the complaints.

18.    Moreover, the DOJ found that the BPD's training on using police force and its Constitutional parameters was severely insufficient, specifically at the initial training levels through the mandatory annual training. The BPD training failed to provide officers with the skills necessary to conduct law enforcement activities in a safe and Constitutional manner.

19.     The BPD also lacked clear and adequate policies, and its officers lacked sufficient guidance to ensure that their enforcement activities were safe, effective, and consistent with Constitutional guarantees. Nor were BPD officers properly trained on how to stop, search, and arrest, leading to frequent and pervasive violations of federal and state law. And in some instances, the Constitutional violations resulted from supervisory officers' explicit instructions.

20.     Internally, the BPD failed to collect and analyze data and it also failed to adequately supervise and monitor officers. The DOJ found that the BPD failed to employ policies, training, supervision, data collection, analysis, and accountability systems to ensure that officers who engaged in unconstitutional practices were held accountable.

21.     Moreover, the BPD discouraged complaints from being filed, it misclassified complaints that were filed, and it conducted little to no investigation of those complaints, leading to a wholly inadequate system of investigating complaints and holding offending officers accountable. The DOJ also found that the BPD failed to use effective methods to investigate allegations of misconduct, supervise investigations of misconduct, and failed to sustain complaints and to apply discipline consistently.

22.     In numerous instances of complaints of excessive use of force, supervising officers deliberately refused to evaluate an offending officer's use of force thoroughly and objectively. In use of force reports, inconsistencies and problematic behavior were purposefully ignored and cover-ups of officer misconduct habitually occurred.

23.     In sum, the BPD lacked meaningful reporting and investigation systems to deter and address officer misconduct. As a result of BPD's deliberate indifference to its duty to take reasonable measures to ensure its officers engaged citizens within constitutional parameters, resistance to accountability persisted, corrupt officers knew they could violate citizens with

impunity, and witnessing officers were reluctant to report misconduct for fear that reporting would be fruitless and would provoke retaliation.

24.     The pattern and practice of Constitutional violations was, and continues to be as identified *infra*, rooted in the lack of training, supervision, and oversight by BPD final policymakers and its supervising officers, and their condonation of the use of unlawful police force, searches, and seizures. The repeated and persistent Constitutional violations manifested in unlawful stops, searches, and arrests of individuals without probable cause and/or reasonable suspicion; disproportionate stops of African Americans; the use of unreasonable force in violation of the Fourth Amendment; and using force or otherwise retaliating against individuals engaged in Constitutionally protected activity, including free speech.

25.     Ultimately, the DOJ concluded, *inter alia*, that the BPD needed significant reform to ensure that it complied with Constitutional guarantees, to which the BPD agreed.

### 2.   Consent Decree

26.     To that end, on April 7, 2017, the BPD filed a Consent Decree with the City and the DOJ to "ensure that the City and the Baltimore Police Department protect individuals' statutory and constitutional rights, treat individuals with dignity and respect, and promote public safety in a manner that is fiscally responsible and responsive to community priorities."

27.     As part of its agreement, the BPD agreed to provide new equipment to officers, which included the implementation of body-worn cameras (BWCs).

28.     The BPD also agreed to provide guidance and training to its officers so that officers' stops, searches, and arrests of citizens of the City complied with the U.S. Constitution and state and federal law.  Specifically, BPD agreed to "ensure that officers issue a citation or make a

custodial arrest only where they have probable cause to believe a person has committed, is committing, or is about to commit a criminal infraction or citable offense."

29.     The BPD also agreed to require officers to use de-escalation techniques, whenever possible, before resorting to force and to reduce the need for force.

30.     The BPD also agreed to require its supervising officers to perform "increasingly rigorous reporting, investigation, and review" of their subordinate officers' uses of force.

31.     The BPD also agreed to promptly investigate and take corrective measures for any officer who violated policies concerning citizens' First Amendment right to free speech, which included the right to criticize law enforcement without the fear of or being subjected to retaliation and the right to observe BPD officers in the discharge of their duties in all public spaces and other areas in which individuals have a right to be.

32.     BPD also agreed to ensure that its officers would not take any police action in retaliation for individuals who lawfully were exercising their right to witness, observe, record, comment on, or peacefully protest police activity. Retaliation included ordering individuals to disperse, stop, or submit to detention, search, arrest, or issuance of a citation, or threatening to stop, detain, search, arrest, or issue a citation to a citizen.

33.     The BPD did not abide by the terms of the Consent Decree. The rampant violations and cover-ups continued, with officers persistently and repeatedly violating the Constitutional rights of City citizens as late as 2018, 2019, and 2020, with violations that were consistent with or identical to the violations that DOJ previously found that occurred over the course of several years.

34.     As discussed *infra*, BPD officers continued to engage in conduct that included knowingly, intentionally, and unlawfully harassing, detaining, and assaulting citizens who were engaged in lawful conduct.

### 3.   Previous Lawsuits Against the BPD

35.      BPD officers' pattern and practice of unconstitutional conduct forced Defendant BPD to defend itself and its officers in lawsuits filed by City citizens whose Constitutional rights were violated, resulting in multiple jury verdicts and settlements.

36.      Notwithstanding the Freddie Gray incident that led to the exposure of the BPD's pattern and practice of Constitutional violations, it has defended multiple suits alleging excessive force, unlawful searches and seizures, police misconduct, and other Constitutional and tort violations. These matters have resulted in verdicts or settlements against the officers. The BPD thus had actual knowledge of its officers' unconstitutional use of force but has failed to take any action to correct, curtail, mitigate, or otherwise cease the violations by BPD police officers.

37.      The following cases are only some of the cases that have been filed against the Department in the wake of Freddie Gray's death either during or after the time into which the Consent Decree was entered. These cases include allegations of using excessive force and/or a pattern and practice by BPD police officers of Constitutional violations, including illegal detention, false arrest and imprisonment, unreasonable and excessive force, unreasonable searches and seizures, and/or other Constitutional violations.

    a.    *Burley, et al. v. Baltimore Police Department, et al.*
            Case No.: 1:18-cv-1743-SAG, D. Md.
            (filed in 2018, settled in 2020)

    b.    *Grim v. Baltimore City Police Department, et al.*
            Case No.: 1:18-cv-3864-ELH, D. Md.
            (filed in 2018 and settled in 2021)

    c.    *Bumgardner v. Taylor, et al.*
            Case No.: 1:18-cv-1438-SAG, D. Md.
            (filed in 2018 and settled in 2020);

d.   *Jones v. Jordan, et al.*
Case No.: 1:16-cv-02662-GLR, D. Md.
(filed in 2016 and settled in 2020)

e.   *McDowell v. Grimes, et al.*
Case No.: 1:17-cv-03200-GLR, D. Md.
(filed in 2017 and settled in 2019)

f.   *Mouzon v. Meshaw, et al.*
Case No.: 1:16-cv-00156-RDB, D. Md.
(filed in 2016 and settled in 2017)

g.   *Leo Joseph Green, et al. v. Byron Conaway, et al.*
Case No. 24-C-16-003305, Cir. Ct. Balt. City
(filed in 2016; Plaintiffs' verdict for $147,100 in
compensatory damages and a punitive damages award for
$40,000)

h.   *Larry Lomax, et al. v. Lieutenant Christopher O'Ree, et al.*
Case No. 24-C-16-002313, Cir. Ct. Balt. City
(Filed in 2016; Plaintiff's verdict in 2018 for $75,000)

i.   *Myreq Williams, et al. v. Off. James Craig*
Case No. 24-C-16-002313, Cir. Ct. Balt. City
(filed in 2016; Plaintiff's verdict in 2018 for $130,000)

j.   *Oats v. Gilley*
Case No. 1:16-cv-001162
(Excessive Force - Settled June 13, 2017 for $50,000)

k.   *White v. Gilley*
Case No. 1:16-cv-000301
(False Imprisonment – Settled May 4, 2017 for $20,000)

l.   *Cloude v. Cardarella*
Case No. 24-C-14-005166
(False Imprisonment – Settled on July 5, 2016 for $69,500)

m.   *Key v. Smallwood et al.*
Case No. 24-C-14-005951
(False Imprisonment – Settled on January 20, 2016 for
$75,000)

11

n.    *Mwamba v. BPD, et al.*
      Case No. 24-C-14-007030
      (False Imprisonment – Settled on January 20, 2016 for
      $60,000)

o.    *Gray et al. v. Kern et al.*
      Case No. 1:13-cv-002270
      (False Imprisonment – Settled on April 26, 2016 for
      $200,000)

p.    *Wells et al. v. Estavien*
      Case No. 24-C-14-006556
      (Excessive Force/Wrongful Death – Settled on January 13,
      2016 for $145,000)

q.    *Abbott v. Grishkot & Edick*
      Case No. 1:13-cv-003530
      (Excessive Force/Malicious Prosecution – Settled on
      October 7, 2015 for $95,000)

r.    *Ashe v. Rassi, et al.*
      Case No. 24-C-11-007245
      (Excessive Force/False Imprisonment – Settled on April 22,
      2015 for $80,000)

s.    *Battle v. Scott*
      Case No. 24-C-13-003886
      (False Arrest – Settled on July 2, 2015 for $23,500)

t.    *Belcher v. Williams*
      Case No. 24-C-14-005894
      (Excessive Force/False Imprisonment – Settled on
      December 8, 2015 for $17,500)

u.    *Bethea v. Finein, et al.*
      Case No. 24-C-14-001363
      (Excessive Force – Settled on January 13, 2015 for $16,000)

v.    *Butler v. Reeping*
      Case No. 24-C-13-000879
      (Excessive Force/False Imprisonment – Plaintiff Verdict and
      award of $272,790.80 on March 19, 2014 – Settled pending

Motion for Judgment Notwithstanding the Verdict on May 5, 2015 for $200,000)

w.    *Cudnik, Jr. v. Lugo et al.*
      Case No. 24-C-14-001247
      (Excessive Force/False Imprisonment – Settled on September 9, 2015 for $67,500)

x.    *Custis v. Fried*
      Case No. 24-C-13-5829
      (Excessive Force/False Imprisonment – Settled on March 9, 2015 for $22,000)

y.    *Friedrich, et al. v. Bryant & Johnson*
      Case No. 1:14-cv-01653
      (Excessive Force/First Amendment – Settled on April 3, 2015 for $14,000)

z.    *Graham v. Darden et al.*
      Case No. 24-C-14-000336
      (Excessive Force/False Imprisonment – Settled on May 27, 2015 for $22,000)

aa.   *Gray v. Etwaroo et al.*
      Case No. 24-C-13-006785
      (Excessive Force/False Imprisonment – Settled on August 26, 2015 for $60,000)

bb.   *Lemon v. Bradley & Badgujar*
      Case No. 24-C-13-4868
      (Excessive Force/False Imprisonment – Settled on March 9, 2015 for $73,000)

cc.   *Lyons v. Harris et al.*
      Case No. 24-C-14-005166
      (Excessive Force/False Imprisonment – Plaintiff Verdict and award of $7,100)

dd.   *Moore v. Smith et al.*
      Case No. 24-C-14-003456
      (Excessive Force/False Imprisonment – Settled on September 11, 2015 for $125,000)

ee.    *Rotondo v. Coker et al.*
       Case No. 24-C-14-001798
       (Excessive Force/False Imprisonment – Settled on March 2,
       2015 for $10,000)

ff.    *Savage v. Hopkins*
       Case No. 24-C-14-005178
       (Excessive Force/False Imprisonment – Settled on June 2,
       2015 for $16,500)

gg.    *Smith v. Boscana et al.*
       Case No. 24-C-14-005179
       (Excessive Force/False Imprisonment – Settled on July 8,
       2015 for $70,000)

hh.    *Smittick v. Harris et al.*
       Case No. 24-C-13-003796
       (Excessive Force/False Imprisonment – Settled on June 15,
       2015 for $80,000)

ii.    *Williams v. Flynn & Hicks*
       Case No. 1:14-cv-001125-WMN
       (False Imprisonment – Settled on September 22, 2015 for
       $15,000)

jj     *Williams v. Slimmer & Rose*
       Case No. 24-C-13-004902
       (Excessive Force/False Imprisonment – Plaintiff Verdict and
       award in the amount of $587,414.20)

kk.    *Yim v. Murray*
       Case No. 1:14-cv-2642BPG
       (Excessive Force – Settled on July 8, 2015 for $150,000)

ll.    *Black-Thaxton v. Durant*
       Case No. 24-C-14-001277
       (Excessive Force – Settled for $55,000)

mm.    *Blanding v. Bradley*
       Case No. 24-C-13-004977
       (Excessive Force/False Imprisonment – Settled for $13,500)

nn.     *Burgess v. McMillion*
Case No. 24-C-14-001165
(Excessive Force/False Imprisonment – Settled on June 4, 2015 for $17,000)

oo.     *Fields v. King et al.*
Case No. 24-C-13-005931
(Excessive Force/False Imprisonment – Settled for $15,000)

pp.     *Ham obo W.H. v. Murphy*
Case No. 24-C-002257
(Excessive Force/False Imprisonment – Settled on June 17, 2015 for $65,000)

qq.     *Henson v. Bradley et al.*
Case No. 24-C-14-005376
(Excessive Force/False Imprisonment – Settled for $24,500)

rr.     *Llewellyn v. Finein et al.*
Case No. 24-C-14-000753
(Excessive Force/False Imprisonment – Settled on December 15, 2014 for $15,000)

ss.     *Odebode v. Kyle*
Case No. 24-C-13-007046
(False Imprisonment – Settled for $15,000)

tt.     *Smith v. BPD et al.*
Case No. 24-C-13-006500
(Excessive Force/False Imprisonment – Settled for $24,750)

uu.     *Thomas v. Briggs*
Case No. 24-C-14-003981
(Malicious Prosecution – Settled on December 29, 2014 for $17,500)

vv.     *Wudtee v. Heffernan*
Case No. 24-C-13-006519
(Excessive Force/False Arrest – Settled for $175,000)

38.     This list is not exhaustive, only representative, in part, of the settlements and verdicts by and against BPD, and it does not include any matters that never led to litigation, including the excessive force claims on behalf of Freddie Carlos Gray which BPD settled for $6.4 Million in 2015. Nor does it contain any internal investigations of complaints during that time frame that were swept under the rug.

39.     Thus, the duration and frequency of these unconstitutional practices were, and are, so widespread and so persistent within the BPD that they constitute a custom and use with the force of law. The BPD maintained a custom, policy, and practice of condoning officers conduct by knowingly, consciously, and repeatedly failing to correct a widespread pattern of unconstitutional conduct, which caused Plaintiffs' Constitutional rights to be violated.

### 4.   BPD and Sgt. Welton Simpson, Jr.

40.     Most BPD officers work in either the Patrol Division or the Criminal Investigation Division, each of which is overseen by a Chief. The Patrol Division is divided into 9 Districts (Central, Eastern, Western, Northern, Northwestern, Northeastern, Southern, Southeastern, and Southwestern). Each District has a Captain, which is led by a Major whose primary responsibility is to direct and supervise officers. That Major reports to the Lieutenant Colonel of Patrol, who reports to the Chief of Patrol, who in turn reports to the Deputy Commissioner, who then reports to the Police Commissioner.

41.     Welton Simpson, Jr. was sworn in as a police officer with the BPD, ultimately earning the rank of Sergeant within Baltimore City. He was hired during the time of "zero tolerance" within the City, when the BPD's pattern and practice of violating citizens' Constitutional rights was institutionalized and central to the BPD's enforcement paradigm.

42.     Consistent with the structure of the BPD, Simpson reported to a Captain and Major within his District, who would then, in turn, report up the chain of command. Throughout Simpsons' tenure of over 20 years with the BPD, he was supervised by multiple layers of superior BPD officers, all of whom, according to the DOJ, failed to supervise and hold lower ranking officers accountable for their Constitutional violations.

43.     Not only was Simpson supposed to be supervised by other officers of the BPD, he was also responsible for both the supervision and oversight of his command, and he was additionally responsible for training his subordinates. Simpson's subordinates acted in conjunction with and at the direction of Simpson.

44.     Despite the fact that BPD entered into a Consent Decree with the express purpose, and legal obligation, to identify officers who committed Constitutional violations, to punish the same, and to deter future Constitutional violations of the citizens of the City, supervising officers utterly failed to adequately train its officers and failed to punish its officers for repeated and flagrant Constitutional violations. By failing to scrutinize and/or reprimand or terminate them, BPD officers, like Defendant Simpson, new that they could continue to harass, intimidate, wrongfully search, seize, arrest, and charge innocent citizens of the City.

45.     The BPD was required to access and review footage from its officers BWC and hold officers who were violating Constitutional rights accountable, yet it utterly failed to hold Defendant Simpson and numerous other BPD officers accountable.

46.     The BPD, although it committed to training or re-training of its officers pursuant to the Consent Decree, did not train or adequately train, re-train, discipline, suspend, or otherwise hold Simpson, other BPD officers, and/or their superior and supervising officers accountable for their flagrant Constitutional violations. Consistent with the pattern and practice of violating

citizens' Constitutional rights, the seizure and subsequent arrest of Plaintiffs were in direct violation of Plaintiffs' Constitutional rights.

47.     Key reforms that were outlined in the Consent Decree were not implemented, and there were significant delays in other initiatives as well. The BPD has also failed to implement training procedures to address the continual and pervasive Constitutional violations committed by BPD officers with impunity, including Defendant Simpson.

48.     Furthermore, upon information and belief, BPD knew that in 2010, a judge issued a domestic violence related protective order against Simpson in favor of his wife based on allegations that Simpson held his service weapon to her head while he sexually assaulted her. As a part of the order of protection, Simpson was ordered not to possess a firearm.  Instead of terminating Simpson for being unable to fulfill a fundamental requirement of policing, BPD placed him in administrative duty during the duration of the order, then allowed him to return to street duty without scrutiny.

49.     The incidents described *infra* were a direct and proximate result of the pattern and practice of the BPD of condoning the violation of citizens' Constitutional rights due to the lack of reform, training, supervision, and accountability.  In fact, BPD's widespread condonation of the use of excessive force and falsification of evidence empowered Defendant Simpson to violate Plaintiffs' Constitutional rights without fear of any reproach.

### B. Welton Simpson's Assault of Zayne & Falsification of Evidence against Zayne & Donnell and the BPD Attempted Cover-up

#### 1.   The Incident

50.     On January 17, 2020, just after 10 pm, Zayne and Donnell were standing in front of "Live from the "A" Grocery Store" at 1527 Pennsylvania Avenue, Baltimore, Maryland.

51.     Simpson arrived at the location in a marked BPD squad car.

52.    Upon information and belief, Simpson, who was working an overtime shift, had just been involved in an unsuccessful foot chase of a suspect a few blocks away from the store.

53.    Upon his arrival at the location, Simpson exited his vehicle and approached the store entrance.

54.    Zayne was standing in front of the door of the store, but there was enough space between Zayne's left side and the door for a person to walk past him into the store without making physical contact.

55.    Although Simpson had enough space to walk past Zayne into the store without touching him, Simpson instead walked straight at Zayne as he approached the door.

56.    When Zayne did not move out of Simpson's way, Simpson stepped to his right and started to go around Zayne on his left side.

57.    Simpson then stated to Zayne, "move out the fucking way."

58.    As Simpson walked past Zayne, he intentionally bumped Zayne's left shoulder with his left shoulder.

59.    In response to Defendant Simpson's intentional contact, Zayne stated, "I'm walking out the store, say excuse me, fuck you talking about, bump me?"

60.    Bystanders, including Donnell, observed Defendant Simpson intentionally bump Zayne and spoke up in response against Simpson's disrespectful conduct.  In response to their intervention, Defendant Simpson stated to one bystander, "when you ready?", as if to suggest that he was ready to physically fight the man.

61.    Zayne then stated to Defendant Simpson, "the next time I'ma hit your bitch ass in your mouth.  Fuck is your problem?  Bump all on me like that?  Bitch ass."

62.     In response, Defendant Simpson stated to Zayne and the bystanders, "go ahead, I got enough for everybody" as if to suggest that he was willing to fight Zayne, Donnell, and the rest of the bystanders.

63.     Zayne then stated, "it's called excuse me, I don't give a fuck."

64.     Suddenly, and without warning or legal justification, Defendant Simpson stated, "get the fuck out my face!" and assaulted Zayne again by pushing him forcefully in the left shoulder with his right arm.

65.     Zayne pushed back in self-defense, and a struggle ensued between the two men as Simpson attempted to detain Zayne.

66.     During the struggle, Donnell attempted to physically intervene to stop Simpson from unlawfully assaulting and detaining Zayne, but he was unsuccessful.

67.     Ultimately, Simpson managed to restrain Zayne on the ground by employing a rear mounted full body hold like that utilized in Mixed Martial Arts practice.

68.     Consistent with the pattern and practice of Constitutional violations *supra*, upon arrival of back up BPD officers, Defendant Simpson lied to his fellow officers by stating that 1) he went into the store to attempt to clear people out of the store, 2) that Zayne would not move out of his way and was blocking the doorway as he attempted to enter, 3) that he pushed past Zayne to get into the door, 4) that Zayne then turned and intentionally spit in his face and pushed him, and 5) that a struggle ensued resulting in Zayne's detention.

69.     As a result of Defendant Simpson's false statements, Zayne was then arrested, transported to Baltimore City Central Booking and Intake Facility, and charged with 2nd Degree Assault, 2nd Degree Assault on a Law Enforcement Officer, Resisting Arrest, and Disorderly Conduct.

70. As a result of Defendant Simpson's false statements, an arrest warrant was issued for Donnell's arrest by Defendant Jessica Scott, along with a BPD "Wanted" poster that was circulated publicly with a picture of Donnell stating that he was involved in an "Assault on Police" involving a group of "black males individuals" who "kicked and dragged a Baltimore City Police Sergeant." The BPD poster further alleged that Donnell was "violent and may attempt to flee".

71. Donnell was arrested on January 19, 2020, and charged with 2nd Degree Assault on a Law Enforcement Officer and Resisting Arrest for his alleged involvement in this incident.

72. Both Zayne and Donnell were wrongfully incarcerated for these false charges for over 6 months.

73. During their respective terms of wrongful incarceration, both Zayne and Donnell's significant others were pregnant with their only children. As a result, Plaintiffs were unable to offer any support to their partners during the critical prenatal process.

74. During his term of incarceration, Donnell was forced to miss the birth of his only child.

75. During his term of wrongful incarceration, Zayne lost his job at H&S Bakery where he made more than $17 per hour. Further, H&S placed Zayne's name on their "Do Not Hire" list for two years because he had just started the job and was still completing his probationary period of employment with the company.

76. During their respective terms of wrongful incarceration, Plaintiffs were forced to endure humiliating, unsanitary, and inhumane conditions.

77. Zayne was unable to eat and lost 15 pounds within the first month of his incarceration. Further, Zayne experienced numerous seizures as a result of his epilepsy while incarcerated which caused him to fall from his bunk on one occasion, injuring his head and back.

However, he was not properly or consistently given his medication to manage his condition while incarcerated.

78.     Donnell was placed on administrative segregation for significant periods of his term of incarceration, at no fault of his own, only receiving 30 minutes of recreational time per week at times.

79.     As a result of Defendant Simpson's false statements, both Zayne and Donnell suffered significant damages, including but not limited to mental and physical injuries, loss of potential earnings, injury to their reputations, humiliation, fright, shame, inconvenience, emotional distress, attorneys' fees, private home detention fees, and the deprivation of their right to liberty.

80.     Defendant Simpson subsequently wrote a use of force report regarding his unlawful arrest of Zayne where he stated that Zayne did not intentionally spit at him, but that he incidentally spewed "spittle" at the officer.

81.     BPD supervisory officers, including but not limited to the Officer Defendants, performed a Use of Force review on Defendant Simpson's arrest of Zayne.

*82.*     On January 31, 2020, even though BPD was in possession of the body camera footage of Defendant Simpson's unlawful arrest of Zayne and Defendant Simpson's contradictory and false statements, Defendant Tom Davis, concluded in his Use of Force review of this incident, with deliberate indifference to Zayne's constitutional rights, that Defendant Simpson had acted reasonably stating:

> *"I find the [use of force] justified and within the guidelines of departmental policy, training, and within [Simpson's] scope of authority.  Sgt Simpson used the least amount of force to subdue and contain Mr. Abdullah, an individual who was displaying active aggression and arguably aggravated aggression...a higher level of force, on the part of Sgt. Simpson could have been warranted.  Never the less, Sgt. Simpson showed great restraint in his containment of Abdullah.  Based on these facts, it is my conclusion that the use of force by take down/leg sweep was objectively*

*reasonable, necessary, proportional, and in compliance with [the BPD Use of Force policy] and the involved officer's training."*

83.     Despite being in possession of the body camera footage of Defendant Simpson's unlawful arrest of Zayne, Officer Defendants, with deliberate indifference for Zayne's Constitutional rights, did not review the footage or failed to scrutinize the footage.

84.     Cellphone video footage of the aftermath of Defendant Simpson's unlawful arrest of Zayne surfaced on social media platforms, and the footage garnered significant media attention.

85.     On January 18, 2020, Commissioner Michael Harrison and BPD held a press conference regarding Simpson's unlawful arrest of Zayne.  After being briefed on the supposed facts of the incident and viewing footage of the incident, Commissioner Harrison stated publicly;

> *"What we saw was appalling, it was unnecessary and it was downright criminal….I saw people kicking the sergeant who was doing his lawful duty where he was supposed to be, doing what he was supposed to do, then people are trying to not only kick the sergeant but prevent the lawful arrest of someone who broke the law….totally unacceptable, and they will feel the full weight of law enforcement when we catch them."*

86.     Commissioner Harrison also released a public statement regarding Simpson's unlawful arrest of Zayne which stated*, "[Simpson] did nothing to provoke the assault, and the sergeant should be commended for using the appropriate amount of force to apprehend his assailant."*

87.     In response to Commissioner Harrison and BPD's false reports about the incident, then Mayor of Baltimore City Jack Young stated publicly, *"The video circulating of a Baltimore police sergeant being attacked while trying to do his job and make an appropriate arrest is a reminder of the dangers our law enforcement officers face on the job...we have a simple message for everyone involved.  Do yourself a favor and surrender.  That type of behavior will not be tolerated, and each person arrested will be held accountable."*

88.     In response to Commissioner Harrison and BPD's false reports about the incident, Maryland Governor Larry Hogan stated publicly, *"I am appalled and disgusted by the vile attack on a Baltimore City Police sergeant.  We absolutely will not tolerate assault of any kind on any member of law enforcement.  We will pursue and prosecute those who assaulted this officer to the fullest extent of the law…it is time city leaders and legislative leaders join our efforts to take our communities back."*

89.     In July of 2020, Plaintiffs', through their respective criminal defense attorneys, publicly released the body camera footage of Simpson's unlawful arrest of Zayne and demanded that the Baltimore City State's Attorney's Office dismiss the false charges lodged against them.

90.     In response to the public release of the body camera footage, a BPD spokesperson stated that, "The Baltimore Police Department received video related to an arrest made by Sgt. Simpson on Jan. 17, 2020.  The video has been handed over to our Public Integrity Bureau for further review."  However, the video they had received was the very body camera footage of this incident which had already been in their possession since the date of Simpson's wrongful arrest.

91.     After the BWC footage was released publicly that directly contradicted Simpson's account and clearly showed a plethora of Constitutional violations and unlawful conduct by Simpson, a *nolle prosequi* was entered as to all charges against Plaintiffs on July 20, 2020.

92.     Three days prior on July 17, 2020, a Baltimore City Grand Jury returned a 2-count indictment against Defendant Simpson for his unlawful actions against Plaintiffs, including one count of False Statement and one count of Misconduct in Office.

93.     On September 13, 2021, Defendant Simpson was convicted of both False Statement and Misconduct in Office following a bench trial by the Baltimore City Circuit Court.

94.     As a direct and proximate result of Defendants' actions or omissions stated herein, Plaintiffs suffered, and continue to suffer from mental anguish, emotional pain and suffering, humiliation, loss of dignity, loss of liberty, and other expenses.

## CLAIMS

## COUNT I

**42 U.S.C. §1983**
**Unconstitutional Custom, Pattern and/or Practice of**
**Unlawful Seizure, Unlawful Arrest, Excessive Use of Force,**
**and Improper Use of Police Powers**
**(*Monell* Claim)**

**(Plaintiffs against Defendant BPD)**

95.     Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

96.     This Count is brought by Plaintiffs against all Defendants identified herein, jointly and severally.

97.     At all relevant times herein, Defendant BPD and all other individual Defendants were state actors and "persons" within the meaning of 42 U.S.C. § 1983 and their conduct was and is subject to 42 U.S.C. § 1983.

98.     At all relevant times herein, Plaintiffs had rights under the Fourth and Fourteenth Amendments not to have their person or property unlawfully seized, detained, and arrested in an unreasonable manner, not to be deprived of their liberty without due process of law, not to be summarily punished, and not to be subjected to the use of unreasonable, illegal, and excessive force.

99.     Defendants, while acting under color of law, jointly and severally, deprived Plaintiffs of their clearly established and well-settled rights under the Fourth and Fourteenth

Amendments of the U.S. Constitution not to have their person or property unlawfully seized, detained, or arrested in an unreasonable manner, not to be deprived of their liberty without due process of law, not to be summarily punished, and not to be subjected to the use of unreasonable, unlawful, and excessive force.

100.    Under the Fourth and Fourteenth Amendments to the U.S. Constitution, Defendant BPD is prohibited from allowing, enabling, condoning and/or facilitating its officers engagement in a pattern, practice, policy, or custom of violating citizens' civil rights and is obligated to adequately train and supervise its officers in the recognition and handling of incidents of misuse of police powers and rights violations committed by Defendant BPD's officers, as well as recognizing patterns of systemic perpetuation of the same.

101.    BPD officers persistently engaged in a widespread practice of unconstitutional conduct of harassing, detaining, arresting, searching, using excessive force, and charging citizens with crimes that they knew had not been committed. This conduct continued without any recourse for years.

102.    BPD officers engaged in a widespread and persistent pattern of unconstitutional conduct such that supervising officers either knew or should have known that they were abusing their police powers and persistently and continuously violating citizens' rights. The BPD and their supervising officers, through their deliberate indifference, failed to correct and otherwise hold BPD officers accountable for abuse of their police powers and their unconstitutional conduct.

103.    As identified *supra*, at all relevant times, the BPD maintained a custom, policy, and/or practice of condoning supervisory officers' conduct in knowingly, consciously, and/or willfully and repeatedly failing to stop or correct the widespread pattern of unconstitutional conduct with deliberate indifference for the civil rights of the citizens of Baltimore.

104.    By establishing, executing, implementing, enforcing, directing, supervising and/or controlling polices, customs, practices, usages, and procedures to be used by police officials and officers of the BPD, as set forth *supra*, Defendant BPD, while acting under color of law, engaged in a pattern and practice of unconstitutional conduct.

105.    Defendant BPD failed to investigate instances where such conduct was alleged, thereby allowing its officers to engage in a pattern and practice of unconstitutional conduct such that the unconstitutional conduct became a custom or usage with the force of law. The duration and frequency of BPD officers' unconstitutional conduct was so prevalent that it became the custom or usage within the BPD, having the force and color of law.

106.    By failing to correct the officers' pervasive Constitutional violations, the BPD injured Plaintiffs, thereby committing an independent act under §1983.

107.    Plaintiffs' rights were violated in the manner that the DOJ outlined in its Report, thus causing Plaintiffs to be deprived of their clearly established and well-settled rights under the Fourth and Fourteenth Amendments not to have their person or property unlawfully seized, detained, and/or arrested in an unreasonable manner, not to be deprived of their liberty without due process of law, not to be summarily punished, and not to be subjected to improper police conduct and/or the use of unreasonable and excessive force.

108.    As alleged herein, Defendant BPD engaged in a pattern, practice, policy, and/or custom of allowing, enabling, condoning, and/or facilitating its officers to use excessive and unlawful force in connection with subduing and/or apprehending individuals. Defendant BPD has also engaged in a pattern, practice, policy, or custom of allowing, enabling, and facilitating its officers to conduct unlawful arrests, unlawful seizures, and has permitted officers to improperly use their police powers by making false statements and/or fabricating evidence.

109.    It is established now and was clearly established at the time of the aforementioned actions that the conduct, pattern, and practices of Defendant BPD and all other individual Defendants identified herein violated the Fourth and Fourteenth Amendment to the U.S. Constitution.

110.    As alleged herein, the actions by all named Defendants were objectively unreasonable, excessive, absent any lawful justification and/or excuse, and were in keeping with the pattern practice, police and/or custom of the Defendant BPD.

111.    As a direct and proximate result of Defendants' actions or omissions identified herein, Plaintiffs sustained physical, emotional, mental, and financial injuries, including, but not limited to, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, loss of liberty, and other expenses. Plaintiffs' liberty and property were deprived without the judgment of their peers or by the law of the land.

112.    Defendant BPD and all other officers identified herein subjected Plaintiffs to these deprivations of their rights with reckless disregard for or with deliberate indifference to whether Plaintiffs' civil rights would be violated by their actions and that such actions were the moving force behind the violations and the injuries Plaintiffs suffered.

113.    Defendants' actions or omissions as described herein, were intentional, wanton, willful, and were done with a blatant and reckless disregard for Plaintiffs' Constitutionally protected rights, and, as such, Plaintiffs are entitled to compensatory damages.

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor, and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, plus costs and interest and any other such relief that this Court deems proper.

## COUNT II

### 42 U.S.C. §1983
### Unconstitutional Custom, Pattern and/or Practice of
### Failure to Train and Supervise
### (*Monell* Claim)

### (Plaintiffs against Defendant BPD)

114.    Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

115.    This Count is brought by Plaintiffs against all Defendants identified herein, jointly and severally.

116.    Under the Fourth and Fourteenth Amendments to the U.S. Constitution, Defendant BPD is prohibited from engaging in and permitting its officers to engage in a pattern, practice, policy or custom of violating citizens' civil rights and it is obligated to train and supervise officers in the recognition and handling of incidents of corruption, misuse of police powers, and civil rights violations committed by Defendant BPD's officers, as well as recognizing patterns of systemic perpetuation of same.

117.    At all relevant times, Defendant BPD, directly and through its officers and agents had an obligation to ensure that its officers, employees, and agents, including, exercised the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the training, supervision, and oversight of all employees, agents, and officers under its direction and control.

118.    As identified *supra*, the training, supervision, and oversight required by Defendant BPD regarding incidents of misuse of police powers, and rights violations committed by Defendant BPD's officers was inadequate, insufficient, or nonexistent, and Defendant BPD, directly and

through its employees, agents and officers, failed to exercise the requisite degree of care in the supervision of all employees, agents, and officers under its direction and control.

119.    Ranking officers and supervisors had actual or constructive knowledge of the pervasive and persistent pattern and practice that its officers were engaged in conduct that violated clearly established rights, and that this conduct posed an unreasonable risk of Constitutional injury to Plaintiffs.

120.    As identified *supra*, ranking offices and supervisors had actual or constructive knowledge that BPD officers were engaged in widespread misconduct over a period of years that posed an unreasonable risk of Constitutional injury to Plaintiffs and other citizens of Baltimore. BPD officers' conduct was so persistent and pervasive that it represented a custom or usage with the force of law.

121.    In spite of this knowledge, Defendant BPD, including ranking officers and supervisors within the BPD, took no action to prevent or remedy the misconduct by BPD officers. They were deliberately indifferent to the persistent Constitutional violations by BPD officers whom they directly supervised. They routinely failed to supervise and discipline their officers, thus allowing the misconduct to continue and flourish.

122.    As alleged herein, Defendant BPD engaged in a pattern, practice, policy, and/or custom of indifference to incidents of Defendant BPD officers using excessive and unlawful force in connection with subduing and/or apprehending individuals, and in so doing, it failed to properly supervise Defendant officers and employees in the proper handling of incidents of corruption, misuse of police powers, and Constitutional rights violations committed by Defendant BPD's officers.

123.    It was readily foreseeable and highly predictable that failing to properly supervise Defendant BPD's officers in the proper handling of incidents of corruption, misuse of police powers, and Constitutional rights violations committed by Defendant BPD's officers would, and in fact did, result in the violation of Plaintiffs' Constitutional rights as alleged herein, and Defendant BPD was indifferent to same.

124.    What is more, the BPD entered into a Consent Decree, where it expressly agreed to prohibit officers from conducting detentions without reasonable suspicion that the person has or is about to commit a crime; it agreed to prohibit officers from making illegal arrests; it agreed to provide at least 4 hours of training on stops, searches, and arrests within requirements of the Consent Decree; and it agreed that a supervising officer would review all documentation of investigatory stops and detentions, searches and arrest reports for completeness and adherence to BPD policy. Yet the BPD and all individual Defendants identified herein, failed to comport with the express requirements of the Consent Decree and failed to implement the training, re-training, supervision, oversight, and accountability measures to ensure compliance with Constitutional guarantees.

125.    As alleged herein, the actions by all named Defendants were unreasonable, excessive, absent any lawful justification and/or excuse, and it was a direct result of Defendant BPD's failure to adequately train, re-train, supervise, oversee, and discipline its employees to properly and lawfully deal with the same. Defendant BPD's failure to properly train, re-train, oversee, supervise, and discipline its employees was tantamount to deliberate indifference as the allegations contained herein occurred well after the entry of the Consent Decree.

126.    Defendant BPD's failure to adequately train and supervise further confirms the aforementioned pattern and practice. As alleged herein, Defendant BPD has engaged in a pattern,

practice, policy, or custom of allowing Defendant its officers to use excessive and unlawful force, conduct illegal arrests, searches, and seizures, and improperly use police powers.

127.   Defendant BPD was aware, and should have foreseen, that Defendant BPD's officers would confront situations as those that were presented by Plaintiffs. Instances involving illegal conduct similar to that which resulted in the deprivation of Plaintiffs' Constitutional rights and the injuries detailed *supra*, have previously been committed by BPD officers and have been similarly mishandled by Defendant BPD as alleged herein.

128.   As alleged herein, the actions by all Defendants were objectively unreasonable, excessive, absent any lawful justification and/or excuse, and was in keeping with the unlawful pattern practice, policy and/or custom of Defendant BPD.

129.   As a direct and proximate result of Defendants' actions or omissions identified herein, Plaintiffs sustained physical, emotional, mental, and financial injuries, including, but not limited to, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, and other expenses. Plaintiffs' liberty and property were deprived without the judgment of their peers or by the law of the land.

130.   Defendant BPD and all other officers identified herein subjected Plaintiffs to these deprivations of rights maliciously and/or acting with reckless disregard for or with deliberate indifference to Plaintiffs' rights, resulting in injuries.

131.   Defendants' actions or omissions as described herein were intentional, wanton, willful, and constituted a blatant and reckless disregard for Plaintiffs' Constitutionally protected rights, and, as such, Plaintiffs are entitled to compensatory damages.

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor, and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, plus costs and interest, and any other such relief that this Court deems proper.

## COUNT III

### 42 U.S.C. §1983
### Excessive Force / Improper Use of Police Powers

### (Plaintiffs against Defendant Simpson)

132.    Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

133.    This Count is brought by Plaintiffs against all Defendants identified herein, jointly and severally.

134.    The individual Defendants identified herein are sued in their individual capacities.

135.    At all times relevant to this Complaint, Defendant Simpson was acting under the color of state law as an officer employed by Defendant BPD.

136.    Under the Fourth and Fourteenth Amendments to the U.S. Constitution, Defendant was prohibited from using excessive force in his efforts to seize, detain, and/or search Plaintiffs.

137.    The actions of Defendant Simpson as detailed herein constitutes excessive and unlawful force in gross violation of Plaintiffs' rights under the Fourth and Fourteenth Amendments of the U.S. Constitution and the guarantees set forth in 42 U.S.C. §1983.

138.    Defendant Simpson's actions, include, but are not limited to, assaulting Zayne, tackling him to the ground, restraining him on the ground, arresting him without probable cause, and submitting false statements against Zayne and Donnell to other law enforcement officers, causing their prolonged wrongful incarceration.

139.    The force used and abuse of police powers by Simpson was intentional, excessive, objectively unreasonable, absent any lawful justification or excuse, unconstitutional, and unlawful force in the restraint and/or apprehension of Plaintiffs.

140.    Defendant Simpson's actions or omissions as described herein, were intentional, wanton, willful, malicious, and a blatant and reckless disregard for Plaintiffs' Constitutionally protected rights, and, as such, Plaintiffs are entitled to compensatory and punitive damages from Defendant Simpson individually.

141.    As a direct and proximate result of Defendants' actions or omissions identified herein, Plaintiffs sustained physical, emotional, mental, and financial injuries, including, but not limited to, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, and other expenses. Plaintiffs' liberty and property were deprived without the judgment of their peers or by the law of the land.

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor, and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, plus costs and interest, punitive damages, and any other such relief that this Court deems proper.

### COUNT IV

**42 U.S.C. §1983**
**False Arrest / False Imprisonment**

**(Plaintiffs against Officer Defendants)**

142.    Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

143.    This Count is brought by Plaintiffs against all Defendants as identified herein, jointly and severally.

144.    The individual Defendants identified herein are sued in their individual capacities.

145.    At all times relevant to this Complaint, Officer Defendants were acting under the color of state law as an officer employed by Defendant BPD.

146.    Officer Defendants falsely arrested Plaintiffs when, without reasonable suspicion or probable cause to believe that they had committed any criminal offenses, detained, handcuffed, arrested, and used excessive force.

147.    Defendant Simpson caused Plaintiffs to be falsely arrested when he knowingly, without reasonable suspicion or probable cause to believe he had committed any criminal offenses, caused Plaintiffs to be detained, handcuffed, and arrested.

148.    Defendant Simpson intended to harm Plaintiffs when, with excessive force and without probable cause, he caused them to be unlawfully detained, arrested, and charged him with crimes and imprisoned.

149.    Defendants Simpson's conduct was without legal justification and was improperly motivated by ill will and actual malice. There was no proper motivation or legal justification to warrant Plaintiffs' wrongful arrests nor their subsequent false imprisonments.

150.    Officer Defendants acted as the BPD's agents, servants, and/or employees, when they employed excessive force, arrested, and detained Plaintiffs without reasonable suspicion or probable cause to believe that they had committed any criminal offenses. Further, Defendants deliberately ignored body camera footage evidence of this incident that was in their possession, and with utter indifference for the rights of Plaintiffs, detained, arrested, and made false statements publicly that caused Plaintiffs to be continuously imprisoned without legal basis or justification. Plaintiffs did not have the freedom to leave during the detention, arrest, or imprisonment.

151.    Defendants' actions or omissions as described herein, were intentional, wanton, willful, malicious, and constituted a blatant and reckless disregard for Plaintiffs' Constitutionally

protected rights, and, as such, Plaintiffs are entitled to compensatory and punitive damages from Defendants, individually.

152.    As a direct and proximate result of Defendants' actions or omissions identified herein, Plaintiffs sustained physical, emotional, mental, and financial injuries, including, but not limited to, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, and other expenses. Plaintiffs' liberty and property were deprived without the judgment of their peers or by the law of the land.

**WHEREFORE**, Plaintiffs requests that this Court enter judgment in their favor, and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, plus costs and interest, punitive damages, and any other such relief that this Court deems proper.

## COUNT V

### Malicious prosecution

### (Plaintiffs against Officer Defendants)

153.    Plaintiff incorporates and adopts each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

154.    This Count is brought by Plaintiff against all Defendants identified herein, jointly and severally.

155.    The individual Defendants identified herein are sued in their official and individual capacities.

156.    At all times relevant to this Complaint, Officer Defendants were acting under the color of state law as officers employed by Defendant BPD.

157.    As described above, the Officer Defendants caused and continued a seizure of Plaintiffs without probable cause. There was no legal justification to seize, arrest, and charge him with the crimes alleged.

158.    Each of the Officer Defendants had a reasonable opportunity to prevent this harm but failed to do so when they actively and intentionally fabricated and/or ratified the charges against Plaintiff Dotson publicly, despite the fact that they knew or should have had knowledge that there was no legal justification for seizing, arresting, searching, and charging Plaintiffs.

159.    Officer Defendants undertook the misconduct described herein with malicious intent and/or willful indifference to Plaintiffs clearly established Constitutional rights.

160.    Officer Defendants accused Plaintiffs of criminal activity knowing those accusations were without probable cause, and they made statements to prosecutors with the intent of exerting influence and to institute and continue judicial proceedings against Plaintiffs.

161.    Officer Defendants caused Plaintiffs to be subjected improperly to judicial proceedings for which there was no probable cause, resulting in Plaintiffs' injuries.

162.    Officer Defendants knowingly made false statements regarding Plaintiff Dotson's alleged culpability despite having actual or constructive knowledge of their falsity.

163.    Officer Defendants were aware that, as described more fully *supra*, no actual or truthful evidence would have supported the charges against Plaintiffs.

164.    The criminal proceedings were terminated in Plaintiffs' favor on July 20, 2020, when the footage from the BWCs became public and a *nolle prosequi* was entered as to all charges.

165.    Officer Defendants' conduct was without legal justification and was improperly motivated by ill will and actual malice. There was no proper motivation or legal justification to

warrant the arrest in the first place, the subsequent false imprisonment, nor the subsequent malicious prosecution and continued imprisonment of Plaintiffs.

166.    Officer Defendants' actions or omissions as described herein, were intentional, wanton, willful, malicious, and constituted a blatant and reckless disregard for Plaintiffs' Constitutionally protected rights, and, as such, Plaintiff's are entitled to compensatory and punitive damages from Defendants individually.

167.    As a direct and proximate result of Officer Defendants' actions or omissions identified herein, Plaintiffs sustained physical, emotional, mental, and financial injuries, including, but not limited to, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, and other expenses. Plaintiffs' liberty and property were deprived without the judgment of their peers or by the law of the land.

**WHEREFORE**, Plaintiffs requests that this Court enter judgment in his favor, and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, plus costs and interest, punitive damages, and any other such relief that this Court deems proper.

### COUNT VI

**Maryland Declaration of Rights Article 24: Deprivation of Liberty and Property, Excessive Force, Improper Use of Police Powers, Illegal Arrest**

**(Plaintiffs against Defendants)**

168.    Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

169.    This Count is brought by Plaintiffs against the Defendants as identified herein, jointly and severally.

170.    The individual Defendants identified herein are sued in their individual capacities.

171.    At all times relevant to this Complaint, Officer Defendants were acting under the color of state law as officers employed by Defendant BPD.

172.    Defendants violated Plaintiffs' civil rights and due process as set forth in the Maryland State Constitution and the Declaration of Rights, including Article 24. Their actions were without provocation and without justification and were done with the intent to violate Plaintiffs' civil rights.

173.    Defendant Simpson violated Plaintiffs' civil rights and due process as set forth in the Maryland State Constitution and the Declaration of Rights, including Article 24. Defendant Simpson's actions were without provocation and without justification and were done with the intent to violate Plaintiffs' civil rights.

174.    Defendants falsely arrested Plaintiffs when, without reasonable suspicion or probable cause to believe they had committed any criminal offenses, detained, handcuffed, arrested, and used excessive force.

175.    Defendants engaged in intentional acts of misconduct, including illegal detention and arrest, excessive force, and false imprisonment, which violated Plaintiffs' civil rights and due process.

176.    Defendants intended to harm Plaintiff Dotson when, with excessive force and without probable cause, they detained and arrested him and charged him with a crime. Defendants further intended to harm Plaintiffs when, without legal justification, they intentionally caused them to be imprisoned.

177.    Defendant Simpson falsely arrested Plaintiffs when, without reasonable suspicion or probable cause to believe they had committed any criminal offenses, caused them to be detained, handcuffed, and arrested. At all relevant times, Plaintiffs were not free to leave.

178.    Defendant Simpson's actions were without provocation and without justification and were made with the intent to violate the civil rights of Plaintiffs, as well as their rights under Article 24 of the Maryland Declaration of Rights.

179.    Defendant Simpson further used excessive force when he caused Zayne to be detained and imprisoned without any legal cause or justification.

180.    Defendant Simpson engaged in intentional acts of misconduct, including illegal detention and arrest, excessive force and false imprisonment which violated Plaintiffs' civil rights and due process.

181.    Defendant Simpson intended harm to Plaintiffs when, without probable cause, he caused them to be detained, arrested, and imprisoned.

182.    The force used by Defendants was intentional, excessive, objectively unreasonable, absent any lawful justification or excuse, unconstitutional, and unlawful in the restraint and/or apprehension of Plaintiffs.

183.    Defendants' conduct was without legal justification and was improperly motivated by ill will and actual malice. There was no proper motivation or legal justification to warrant the arrests in the first place nor the subsequent false imprisonments. Defendants engaged in intentional acts of misconduct, including excessive force, and false imprisonment which violated Plaintiffs' civil rights and due process.

184.    Defendants acted as the BPD's and the State's agents, servants, and/or employees, when they employed excessive force, arrested, and detained Plaintiffs without reasonable suspicion or probable cause to believe that they had committed any criminal offenses. Further, Defendants employed excessive force when they detained, searched, and arrested Plaintiffs without legal basis or justification.

185.    The force used by Defendants was unconstitutional, intentional, excessive, objectively unreasonable, conscience shocking, and absent any lawful justification or excuse. Defendants' conduct lacked any legal rationale, and, as such, Plaintiffs are entitled to compensatory and punitive damages from Officer Defendants individually, and from Defendant BPD under the theory of respondeat superior because Defendant BPD is vicariously liable to Plaintiffs for Officer Defendants' violations of their rights under Article 24 of the Maryland Declaration of Rights.

186.    As a direct and proximate result of Defendants' actions or omissions identified herein, Plaintiffs sustained physical, emotional, mental, and financial injuries, including, but not limited to, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, and other expenses. Plaintiffs' liberty and property were deprived without the judgment of their peers or by the law of the land.

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor, and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, plus costs and interest, punitive damages, and any other such relief that this Court deems proper.

## COUNT VII

### Battery

### (Plaintiff Abdullah against Defendant Simpson)

187.    Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

188.    This Count is brought by Plaintiffs against the Defendants as identified herein, jointly and severally.

189.    The individual Defendants identified herein are sued in their individual capacities. At all times relevant to this Complaint, Defendants Simpson was acting under the color of state law as an officer employed by Defendant BPD.

190.    Defendant Simpson assaulted and battered Zayne when he tackled him, forced him to the ground, and forcefully detained him. Defendant Simpson intended to unlawfully invade his physical well-being through harmful or offensive contact.

191.    Defendant Simpson acted as BPD's agent, servant, and/or employee, when he employed excessive force, arrested, and detained Zayne, without reasonable suspicion or probable cause to believe that he had committed any criminal offenses. Further, Defendant Simpson employed excessive force, detained, arrested, and searched Zayne without legal basis or justification, and Zayne did not have the freedom to leave during the detention and arrest.

192.    Defendant Simpson's conduct was without legal justification and was improperly motivated by ill will and actual malice.

193.    Defendant Simpson's intentional actions caused Zayne to be put in reasonable apprehension of immediate touching to which he did not consent.

194.    Zayne was frightened by the continued unlawful actions of Defendants Simpson, including the assault upon him.

195.    As a result of these acts, Plaintiff sustained physical, emotional, mental, and financial injuries, including, but not limited to, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, and other expenses. Plaintiff's liberty and property were deprived without the judgment of their peers or by the law of the land.

**WHEREFORE**, Plaintiff Abdullah requests that this Court enter judgment in his favor, and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in

compensatory damages, plus costs and interest, punitive damages, and any other such relief that this Court deems proper.

## COUNT VIII

### Gross Negligence

### (Plaintiffs against Defendants)

196.    Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

197.    This Count is brought by Plaintiffs against the Defendants as identified herein, jointly and severally.

198.    The individual Defendants identified herein are sued in their individual capacities. At all times relevant to this Complaint the individual Defendants were acting under the color of state law as officers employed by Defendant BPD.

199.    Defendants had a duty to conduct themselves in accordance with the law and Constitutional guarantees, and they had a duty to exercise due care when encountering citizens such as Plaintiffs to avoid causing physical or mental injury.

200.    However, Defendants breached their duty when they engaged in intentional, willful and wanton misconduct and with a reckless disregard for human life or the rights of Plaintiffs. Defendants intentionally inflicted bodily injury to Plaintiff Dotson and acted with utter indifference to Plaintiff's rights and wellbeing.

201.    Defendants' gross negligence proximately caused the injuries that Plaintiffs sustained. All of Plaintiffs' injuries were caused solely by the negligence of Defendants without any contributory negligence by Plaintiffs.

202.     Defendants' conduct was without legal justification and was improperly motivated by ill will and actual malice. Defendants intended to harm Plaintiffs when, with excessive force and without probable cause, they detained, and arrested them. Defendants further intended to harm Plaintiffs when, without legal justification, they intentionally caused them to be imprisoned.

203.     As a result of these acts, Plaintiffs sustained physical, emotional, mental, and financial injuries, including, but not limited to, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, and other expenses. Plaintiffs' liberty and property were deprived without the judgment of their peers or by the law of the land.

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor, and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, plus costs and interest, punitive damages, and any other such relief that this Court deems proper.

**COUNT IX**

**Negligent Hiring, Training, Supervision and Retention**

**(Plaintiffs against Defendant BPD)**

204.     Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

205.     This Count is brought by Plaintiffs against all Defendants identified herein, jointly and severally.

206.     The individual Defendants identified herein are sued in their individual capacities.

207.     At all times relevant to this Complaint, Defendants were acting under the color of state law as officers employed by Defendant BPD.

208.    Defendant BPD maintained a duty to use reasonable care in hiring, training, supervising and retaining individuals who were competent and fit to perform the duties of a police officer.

209.    Defendant BPD knew or should have known that the Officer Defendants, especially Defendant Simpson, proved unfit for their assigned duties.  Defendants are obligated to train and supervise officers in the recognition and handling of incidents of corruption, misuse of police powers, and rights violations committed by Defendant BPD's officers, as well as recognizing patterns of systemic perpetuation of same.

210.    At all relevant times, Defendant BPD, directly and through its officers and agents had an obligation to ensure that its officers, employees, and agents, exercised the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the training, supervision, and oversight of all employees, agents, and officers under its direction and control.

211.    As identified *supra*, the training, supervision, and oversight required by Defendant BPD regarding incidents of misuse of police powers, and rights violations committed by Defendant BPD's officers was inadequate, insufficient, or nonexistent, and Defendant BPD, directly and through its employees, agents and officers, failed to exercise the above requisite degree of care in the supervision of all employees, agents, and officers under its direction and control.

212.    Defendant BPD, through its agents and employees, supervised the Officer Defendants prior to and during the events at issue.

213.    The ranking officers and supervisors had actual or constructive knowledge of the pervasive and persistent pattern and practice that its officers were engaged in conduct that violated

citizen's clearly established rights, and that this conduct posed an unreasonable risk of Constitutional injury to Plaintiffs.

214.    In spite of this knowledge, Defendant BPD took no action to prevent or remedy the misconduct by BPD officers or terminate these individuals' employment. BPD was deliberately indifferent to the persistent Constitutional violations by BPD officers whom it directly supervised. In breach of its duties, it routinely failed to supervise and discipline its officers, thus allowing the misconduct to continue and flourish.

215.    Defendant BPD knew or should have known that the Officer Defendants would come into contact with the public, including Plaintiffs, meaning that the risk Officer Defendants would violate the Constitutional rights of Plaintiffs was foreseeable.

216.    Defendant BPD failed to properly supervise its officers and employees in the proper handling of incidents of corruption, misuse of police powers, and civil rights violations committed by Defendant BPD's officers.

217.    It was readily foreseeable and highly predictable that failing to properly supervise Defendant BPD's officers in the proper handling of incidents of corruption, misuse of police powers, and rights violation committed by Defendant BPD's officers would, and in fact did, result in the violation of Plaintiffs' Constitutional rights as alleged herein and Defendant BPD was indifferent to same.

218.    As a direct and proximate result of Defendants' actions or omissions identified herein, Plaintiffs sustained physical, emotional, mental, and financial injuries, including, but not limited to, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, and other expenses. Plaintiffs' liberty and property were deprived without the judgment of their peers or by the law of the land.

219.     Defendants BPD and all other officers identified herein subjected Plaintiffs to these deprivations of their rights with reckless disregard for or with deliberate indifference to whether Plaintiffs' rights would be violated by their actions and that such actions were the moving force in their having such rights violated and incurring their injuries.

220.     Defendant BPD's actions or omissions as described herein, were intentional, wanton, willful, and a blatant and reckless disregard for Plaintiffs' Constitutionally protected rights, and, as such, Plaintiffs are entitled to compensatory damages from Defendants, jointly and severally.

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor, and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, plus costs and interest, punitive damages, and any other such relief that this Court deems proper.

## COUNT XI

### Indemnification

221.     Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

222.     Under Maryland law, public entities are directed to pay any tort judgment for which their employees are liable within the scope of their employment.

223.     Officer Defendants are or were employees of Defendant BPD, and they acted within the scope of their employment and in accordance with accepted custom and usage when they committed the misconduct described herein.

224.     Accordingly, Defendant BPD is required to indemnify any and all of the individual Defendants against whom judgments are entered in this case.

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor, and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, plus costs and interest, and any other such relief that this Court deems proper.

## RELIEF

**WHEREFORE**, as to each and every count pled, Plaintiffs respectfully request that this court award them:

A.  Judgment in favor of Plaintiffs and against Defendants, jointly and severally, finding Defendants liable to Plaintiffs;

B.  Award Plaintiffs compensatory damages in an amount which exceeds $75,000.00, plus interest and costs in an amount to be determined at trial;

C.  Reimburse Plaintiffs all costs paid by Plaintiffs or on behalf of Plaintiffs in connection with the incident in an amount to be determined at trial;

D.  Award the costs and expenses of this case, including attorneys' fees;

E.  Award pre-judgement and post-judgement interest;

F.  Award punitive damages where applicable, and

G.  Award all other further and general relief as the court deems just and necessary.


Dated: June 6, 2022                              Respectfully submitted,



                                                 MURPHY, FALCON & MURPHY

                                                 By: /s/ William H. Murphy, Jr._____
                                                 William H. Murphy, Jr. (Bar # 07985)

                                                 /s/ Malcolm P. Ruff_____
                                                 Malcolm P. Ruff (Bar # 21595)

One South Street, 30th Floor
Baltimore, MD 21202
Telephone: (410) 951-8744
Facsimile: (410) 539-6599
Email: billy.murphy@murphyfalcon.com
          malcolm.ruff@murphyfalcon.com

*Attorneys for Plaintiffs*


## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on the issues set forth in this Complaint.


/s/ *Malcolm P. Ruff*
Malcolm P. Ruff